MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO P.C.
Andrew D. Skale (SBN 211096)
adskale@mintz.com
Randy K. Jones (SBN 141711)
rkjones@mintz.com
Courtney Rockett (*pro hac vice*)
crockett@mintz.com
Kara M. Cormier (*pro hac vice*)
kmcormier@mintz.com
Adam B. Korn (ABN 331133)
abkorn@mintz.com
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone:  (858) 314-1500
Facsimile:  (858) 314-1501

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| STITCH EDITING LTD.,<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK, INC., TIKTOK LLC, TIKTOK LTD., and BYTEDANCE LTD.,<br><br>Defendants and Counterclaimants. | **Case No. 2:21-cv-06636-SB-SK**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS**<br><br>Date:     December 2, 2022<br>Time:    8:30 a.m.<br>Courtroom: 6C<br><br>Case assigned to Hon. Stanley Blumenfeld, Jr.,<br>Magistrate Judge Steve Kim<br><br>Complaint filed: April 12, 2021<br>Trial Date: February 6, 2023 |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     LEGAL STANDARDS ............................................................................ 1

III.    FACTS: A TIMELINE OF MISCONDUCT ........................................... 3

        A.      Defendants Failed to Preserve Evidence ...................................... 3

                1.      Defendants Failed to Issue a Litigation Hold When the
                        Duty to Preserve Arose on December 28, 2020 ..................... 3

                2.      Defendants April 15, 2021 Litigation Hold Was Deficient ...... 3

                3.      Defendants Belatedly Issued a Second Litigation Hold to
                        12 New Custodians on August 31, 2022 .................................. 5

        B.      Defense Counsel Failed to Reasonably Search for Documents or
                Oversee Discovery ........................................................................ 5

                1.      Defendants Produced Only 21 Internal Documents by
                        August 2022 ............................................................................ 5

                2.      Defendants Had Only Two Custodians – Who Made Their
                        Own Relevancy Determinations – Search for Documents ......... 6

                3.      Defendants Failed to Promptly Notify Plaintiff and the
                        Court of a Proprietary System That Would Delay
                        Production ................................................................................ 7

        C.      Defense Counsel Engaged in Hide-The-Ball Litigation Tactics
                and Made Misrepresentations to Opposing Counsel ..................... 7

        D.      Defendants Refused to Appear for Properly Noticed Depositions
                and Perpetrated a Fraud on the Court Concerning Herman Chou ...... 11

        E.      The August 31, 2022 Order ......................................................... 12

        F.      Defense Counsel Admitted to Multiple Rule 26 Failures .............. 13

        G.      The September 20, 2022 Order ..................................................... 15

        H.      Defendants Did Not Comply with the Court's Two Orders .............. 15

        I.      Defendants Withheld Responsive Documents Until After the
                Summary Judgment and Expert Deadlines ................................... 17

IV.     ARGUMENT ......................................................................................... 19

        A.      Defendants Violated Multiple Court Orders, are in Contempt,
                and Should Be Assessed Monetary Sanctions for that Contempt ...... 19

        B.      Defendants' Discovery Misconduct Also Warrants Sanctions .......... 20

V.      CONCLUSION ..................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Carrillo v. Schneider Logistics, Inc.*,
  2012 WL 4791614 (C.D. Cal. Oct. 5, 2012) ................................................*passim*

*Chiteishvili v. Vertifx LLC*,
  2018 WL 6219988 (C.D. Cal. Nov. 14, 2018) .............................................. 2, 22

*Chiteishvili v. Vertifx LLC*,
  2018 WL 6219990 (C.D. Cal. Nov. 14, 2018) ................................................... 2

*Gonzales v. Charter Communs., LLC*,
  2022 WL 570003 (C.D. Cal. Jan. 26, 2022)................................................ 1, 2, 3

*Hous. Rts. Ctr. v. Sterling*,
  2005 WL 3320739 (C.D. Cal. Mar. 2, 2005) ....................................................23

*Infanzon v. Allstate Ins. Co.*,
  335 F.R.D. 305 (C.D. Cal. 2020) ......................................................................22

*Line-X LLC v. Tefft*,
  2021 WL 6494881 (C.D. Cal. Dec. 21, 2021) .......................................... 1, 2, 19

*Meggitt (Orange Cnty.), Inc. v. Nie Yongzhong*,
  2015 WL 1809354 (C.D. Cal. Apr. 21, 2015)....................................................22

*Notorious B.I.G. LLC v. Yes. Snowboards*,
  2021 WL 6752168 (C.D. Cal. Dec. 22, 2021),
  *r&r adopted*, 2022 WL 1909548 (C.D. Cal. Jun. 3, 2022) ...............................19

*R&R Sails Inc. v. Ins. Co. of State of Pa.*,
  251 F.R.D. 520 (S.D. Cal. 2008)........................................................................24

*Rago v. Select Comfort Retail Corp.*,
  2020 WL 8611033 (C.D. Cal. Dec. 9, 2020) .....................................................25

*Ramos v. Swatzell*,
  2017 WL 2857523 (C.D. Cal. June 5, 2017),
  *r&r adopted*, 2017 WL 2841695 (C.D. Cal. June 30, 2017) .............................22

*Rodriguez v. City of Los Angeles*,
    2021 WL 4692401 (C.D. Cal. Aug. 6, 2021) ................................................... 3, 22

*Shell Offshore Inc. v. Greenpeace, Inc.*,
    815 F.3d 623 (9th Cir. 2016) ................................................................................ 2

*Spencer v. Lunada Bay Boys*,
    2017 WL 10518023 (C.D. Cal. Dec. 13, 2017) ................................................. 22

*Tacori Enterprises v. Beverlly Jewellery Co.*,
    253 F.R.D. 577 (C.D. Cal. 2008) ....................................................................... 22

*Tatung Co., Ltd. v. Hsu*,
    2016 WL 1047343 (C.D. Cal. Mar. 16, 2016) ................................................... 25

*Woodhouse v. United States Gov't*,
    2021 WL 6333468 (C.D. Cal. Nov. 24, 2021) (Blumenfeld, J.)......................... 1

**Rules**

Fed. R. Civ. P. 26 ...............................................................................*passim*

Fed. R. Civ. P. 37 ...............................................................................*passim*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT
AND SANCTIONS

## I.    INTRODUCTION

Defendants' discovery misconduct has persisted throughout this litigation, causing Plaintiff Stitch Editing Ltd. to incur inordinate expenses to fight discovery battles that should never have arisen, and preventing it from fully prosecuting its case. Compounding their conduct, Defendants violated multiple Court orders.  Judge Kim even warned Defendants that their conduct likely justified monetary sanctions; and that is exactly what Plaintiff seeks here.

## II.    LEGAL STANDARDS

At least six independent grounds support the award of monetary sanctions.

<u>Contempt</u>. First, Defendants are in contempt of the Court's discovery orders. "Civil contempt occurs 'when a party fails to comply with a court order.'" *Line-X LLC v. Tefft*, 2021 WL 6494881, at *1 (C.D. Cal. Dec. 21, 2021) (Blumenfeld, J.). "A court may find a party in civil contempt if '(1) [the party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence.' A district court 'has wide latitude in determining whether there has been a contemptuous def[ianc]e of its order.'" *Gonzales v. Charter Communs., LLC*, 2022 WL 570003, at *3 (C.D. Cal. Jan. 26, 2022) (internal citations omitted) (Blumenfeld, J.). Once the moving party demonstrates "that the alleged contemnor violated 'a specific and definite order of the court,'" the "burden then shifts to the opposing party to demonstrate that 'they took every reasonable step to comply.' The contempt 'need not be willful, and there is no good faith exception to the requirement of obedience to a court order.'" *Id.*

If a contemnor alleges an inability to comply, "the contemnor must establish 'categorically and in detail' why he is presently unable to comply with the court's order." *Woodhouse v. United States Gov't*, 2021 WL 6333468, at *7 (C.D. Cal. Nov. 24, 2021) (Blumenfeld, J.). The Court "may wield its civil contempt powers" by awarding an "unconditional monetary sanction" to compensate Plaintiff for the "unnecessary injuries or costs" it incurred as a result of Defendants' "contemptuous

conduct." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016). This Court has previously ordered monetary sanctions to address a party's civil contempt. *Line-X*, 2021 WL 6494881, at *2 (ordering fees and costs).

Rule 37(b)(2)(c). Second, Rule 37(b)(2)(A) authorizes the Court to treat Defendants' "failure to obey any [discovery] order" as "contempt of court." Under Rule 37(b)(2)(c), the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(c). Bad faith is not a prerequisite to sanctions. *Gonzales*, 2022 WL 570003, at *3 (citations omitted).

Rule 37(c)(1)(A). Third, under Rule 37(c)(1)(A) the Court "may order payment of the reasonable expenses, including attorney's fees, caused by [a party's] failure [to provide full and complete disclosures pursuant to Rule 26(a) or (e) or to supplement those disclosures." Fed. R. Civ. P. 37(c)(1)(A).

Rule 37(d)(1)(A)(i). Fourth, "[t]he Court may impose sanctions on a party who fails to attend his properly noticed deposition" under Fed. R. Civ. P. 37(d)(1)(A)(i). *Chiteishvili v. Vertifx LLC*, 2018 WL 6219990, at *2 (C.D. Cal. Nov. 14, 2018) (stating rule); *Chiteishvili v. Vertifx LLC*, 2018 WL 6219988, at *1 (C.D. Cal. Nov. 14, 2018) (granting monetary sanctions for failure to appear at deposition).

Rule 26(g). Fifth, sanctions are also available under Rule 26(g). That rule provides that by signing a discovery response or objection, an attorney is certifying "to the best of the person's knowledge, information, and belief ***formed after reasonable inquiry***" that the disclosure "is complete and correct as of the time it is made" and that the response is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1) (emphasis added). If an attorney's "certification violates this rule without substantial justification, the court, on motion or on its own motion, ***must*** impose an appropriate sanction on the signer, the party on whose behalf the signer

was acting, or both." Fed. R. Civ. P. 26(g)(3) (emphasis added); *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 4791614, at *9 (C.D. Cal. Oct. 5, 2012) (awarding sanctions for false certifications following unreasonable inquiry).

<u>Inherent Powers</u>. Sixth, a Court has the inherent power to sanction discovery misconduct. *Gonzales*, 2022 WL 570003, at *3. Monetary sanctions are warranted for the failure to preserve evidence. *Carrillo*, 2012 WL 4791614, at *9. Moreover, where, as here, a party misleads opposing counsel about the ability to search for documents and withholds relevant information until the discovery cutoff (and then fails to produce all responsive documents), monetary sanctions are warranted. *Rodriguez v. City of Los Angeles*, 2021 WL 4692401, at *2 (C.D. Cal. Aug. 6, 2021).

## III.   FACTS: A TIMELINE OF MISCONDUCT

### A.   Defendants Failed to Preserve Evidence

#### 1.   <u>Defendants Failed to Issue a Litigation Hold When the Duty to Preserve Arose on December 28, 2020</u>

Plaintiff sent Defendants a cease and desist letter on December 28, 2020, demanding that Defendants "cease use of Stitch Editing's protected mark." Declaration of Kara M. Cormier, dated November 4, 2022 ("Cormier Decl."), Ex. A. Defendants internally shared the substance of the letter and began to select alternative names for the infringing feature in case they had to change the name. *Id.*, Ex. B. Defendants also retained counsel who responded to Plaintiff; and Plaintiff in turn sent a second cease and desist letter on January 27, 2021. *Id.*, Ex. D. Defendants did not issue a litigation hold at or around the time they received the two cease and desist letters, nor did they collect or preserve any documents or take any other measures to prevent destruction of evidence. *Id.*, Ex. C (9/2 Tr. at 22:4-23:12; 56:24-57:19).

#### 2.   <u>Defendants April 15, 2021 Litigation Hold Was Deficient</u>

Defendants disclosed – for the first time on September 6, 2022 – that they did not issue a litigation hold until April 15, 2021, almost 4 months after litigation was threatened. *Id.*, Ex. E. Defendants' in-house counsel prepared the list of recipients;

outside counsel made no attempt to ascertain its propriety. *Id.*, Ex. C (9/2/22 Tr. at 28:5-29:24). The recipients were patently inadequate. Missing from the notice were:

- 13 out of the 15 custodians that Defendants themselves identified as "Stakeholders" of the Stitch Editing Feature, 12 of whom Defendants later addressed a hold notice to on 8/31/22; *id.* at Exs. E and F; and

- 2 custodians (Andrew Maddox and John Reggio) that Defendants later identified as persons most knowledgeable by designating them as 30(b)(6) corporate representatives; *id.*, Ex. E.

The preservation range was also inadequate because it started as of January 2020, *id.*, Ex. E, when the conception and naming of the Stitch Editing Feature began in or before 2019. *Id.*, Ex. Y. Even after producing documents showing the date should have been earlier, Defendants did not adjust the litigation hold (and even maintained the improper date when they issued an August 31, 2022 hold to 12 more custodians). *Id.*, Ex. E. As discussed in Section III(F) below, the hold did not result in preservation of all relevant data systems/sources as it only preserved 2 of many data sources.

Defendants also made no effort to enforce compliance with this hold. They did not ensure the addressees actually received, understood, or complied with the hold. *Id.,* Ex. C (9/2 Tr. at 25:21-24). Indeed, two addressees admitted that they never received the hold, were able to (and in some cases ***did***) delete documents, and were not aware of any policy prohibiting deletion. *Id.*, Ex. G (Deposition of Miwa Tachibana, dated July 7, 2022 ("Tachibana Dep.") at 68:19-22; 72:5-73:16); Ex Z (Deposition of Herman Chou, dated Oct. 18, 2022 ("Chou Dep.") at 76:25–77:25, 82:12–83:23). Moreover, Defendants had no written document preservation policies in place at that time. *Id.*, Ex. C (9/2 Tr. at 20:11-14). Instead, they had document destruction policies that required employees to purge confidential information when they deemed it no longer needed. *Id.* Ex. C (9/2 Tr. at 20:15-21:18).

Defendants make much of the fact that a so-called auto-delete function in Lark was disabled, but this only ceased the automatic deletion of items already in the "trash bin," it did not prevent users from deleting documents or data. *Id.*, Ex. C (9/2/22 Tr.

at 50:2-7). Defendants did not even know what auto-delete functions existed for their data sources other than Lark, and if so, whether they had ever been disabled. *Id.*, Ex. C (9/2/22 Tr. at 49:2-15; 50:21-51:25). Further, at least one key custodian testified that he had deleted Lark chats during the relevant time period and may have deleted his internet search history (which could have shown a clearance search for the STITCH mark or knowledge of Plaintiff). *Id.*, Ex. Z at 76:11-77:25; 82:12–83:23.

### 3. Defendants Belatedly Issued a Second Litigation Hold to 12 New Custodians on August 31, 2022

On August 31, 2022, twenty months after the duty to preserve arose and only two weeks before the close of fact discovery, Defendants issued a litigation hold to twelve new recipients, including nine of the "Stitch" "Stakeholders" that Defendants identified as involved with creating and naming the infringing feature. *Id.*, Ex. E. This hold, like the last one, failed to include two of Defendants' 30(b)(6) representatives and dozens of other key custodians, and inappropriately started from January 2020. *Id.*, Ex. Y. It also omitted four of the remaining "Stakeholders" that Defendants identified for the feature, *id.*, Ex. F, and as discussed in Section III(F), did not result in preservation of all potentially relevant data/sources.

### B. Defense Counsel Failed to Reasonably Search for Documents or Oversee Discovery

#### 1. Defendants Produced Only 21 Internal Documents by August 2022

Defense counsel failed to educate themselves about Defendants' systems, failed to properly oversee discovery, and as a result produced ***no*** internal documents until March 16, 2022, at which point they produced only ***seven*** internal documents. *Id.* at ¶ 11. Prior thereto, Defendants only produced documents that they found on the Internet, which were not even in Defendants' files. *Id.*, Ex. C (9/2 Tr. at 69:19-72:6). Defendants produced another ***three*** internal documents on May 3. *Id.*, ¶ 11. Plaintiff then demanded to review Defendants' search terms and custodians. *Id.* Defendants refused during multiple meet and confers, and then – as discussed in Section III(C) below – falsely claimed that Lark could not be searched, so they had custodians

manually search for documents using "review terms." *Id.*, Ex. I. That was false.

Lark can be searched. Counsel was just unaware of this capability because they failed to familiarize themselves with their clients' systems. *Id.* at ¶ 13. And when Plaintiff asked to have a neutral third party search for documents, defense counsel stated: "I'm positive that won't happen. ByteDance won't even give us, their attorneys, access to their internal system. So they're not going to have a third party come in. We proposed that to them as a way of us helping them find documents as well. And they're, they're very closed off to any third party access to their systems." *Id.* By August 8, 2022, Defendants had produced only **_21_** distinct internal documents, necessitating further meet and confers and motion practice. *Id.*, ¶ 12.

> 2.   Defendants Had Only Two Custodians – Who Made Their Own Relevancy Determinations – Search for Documents

On June 24, 2022, Defendants informed Plaintiff for the first time that they had only **two** custodians search for documents, despite having hundreds of thousands of employees and one of their own internal documents identifying 15 key "stakeholders" for the infringing feature. *Id.*, Exs. F, I. This was not an attorney-led search. The two employees – Miwa Tachibana and Michael Buzinover – ran the search and decided on their own what documents were relevant and which were not. *Id.*, Ex. J at 103:3-104:3; 248:15-21 ("Q. Who . . . made the decision as to whether or not documents were relevant? A. I suppose I did."; Q: "[D]id you just turn over everything that you found to in-house counsel or did you look at the things that came up and say this one's relevant, this one's not? A: A little closer to the second."). Mr. Buzinover even testified that he failed to produce a document linked to one of the naming documents, simply because "it didn't have the word stitch in it," and so he "didn't think it was relevant." *Id.*, Ex. J at 103:3-104:3.

Both custodians also admitted that they only had access to Lark documents they created or were shared with them, and there were multiple systems containing relevant evidence that they never searched. *Id.*, Ex. J at 49:22-24, 60:20-61:19, 97:13-

98:14 (Buzinover); *id.*, Ex. G at 29:11-12, 30:3-32:16 (Tachibana). Defendants confirmed the same. *Id.*, Ex. C (9/2 Tr. at 41:21-42:21). Ms. Tachibana also disclaimed knowledge of the bulk of relevant facts, including about the naming of the feature, and professed a lack of knowledge or memory 143 times in her deposition. *Id.*, ¶ 15 & Ex. G at 14:5-20, 68:19-22, 208:1-17, 226:9-19. Plaintiff asked Defendants to search all custodians Plaintiff identified as having relevant information, and specifically the 15 "Stakeholders'" files on July 12, 2022, and after many follow-ups, Defendants finally told Plaintiff on September 6, that they refused to search even the 15 "Stakeholders'" files. *Id.*, Exs. E, K, ¶ 17.

> 3.  Defendants Failed to Promptly Notify Plaintiff and the Court of a Proprietary System That Would Delay Production

Defense counsel blames Defendants' proprietary document management system (Lark) for their delays. *Id.*, Ex. C (9/2/22 Tr. at 66:3-71:4). But they knew about the technical limitations of Lark "from the outset," *id.*, and did not disclose its existence or the difficulties in producing documents from it to Plaintiff or the Court at that time. Instead, at the scheduling conference, defense counsel only raised concerns about getting documents from China. *Id.*, Ex. H. Defense counsel even admitted that when they expressed concern about their ability to provide metadata, they "didn't give a lot of detail" because they "were still trying to get a handle on what was possible and what was not possible" and they "didn't know the answers." *Id.*, Ex. C (9/2 Tr. at 79:5-80:6). In fact, defense counsel did not even know the name of this system during a June 17, **2022** meet and confer and did not disclose it to Plaintiff until June 24, 2022. *Id.*, Ex. I.

## C.   Defense Counsel Engaged in Hide-The-Ball Litigation Tactics and Made Misrepresentations to Opposing Counsel

Defendants' *modus operandi* during discovery was to withhold documents and make false representations about the existence of documents or their ability to find them. This needlessly drove up discovery costs. A few examples follow:

*Beta Testing*. Plaintiff propounded a request for documents about Defendants'

beta testing of the Stitch Editing Feature (RFP No. 55). Defendants responded that despite a "careful investigation" they could not "locate any documents related to either [] beta [testing] or any pre-commercial launch testing for the stitch editing feature." *Id.*, ¶ 21, Ex. M. Defendants also refused to search for documents without using the word "testing" unless Plaintiff propounded a broader document request, even though they clearly understood the scope of the request. *Id.*, ¶ 19, Ex. L. Plaintiff nevertheless propounded a broader request (RFP 57) on March 16. *Id.* at ¶ 20. Defendants ignored it, waiting nearly three months to respond (well beyond the FRCP limit). *Id.* On June 10, defense counsel signed under Rule 26(g) a response and objection that falsely claimed "Defendants ha[d] produced all documents related to testing that Defendants have in their possession, control, or custody that referenced the stitch product feature offered on the TikTok platform." *Id.*, Ex. M.

Plaintiff showed defense counsel TikTok posts, blogs, and articles referring to beta testing of the infringing feature. *Id.*, ¶ 19. Defense counsel responded by again falsely asserting that Plaintiff's claim of beta testing was "baseless." *Id.*, ¶ 21, Ex. N. Then Plaintiff showed defense counsel several documents in their own meager production alluding to the existence of beta testing. *Id.*, ¶ 22, Ex. F (Defendants "Enable[d] beta for ambassadors & Design" in April 2020). Defendants continued to deny the existence of any beta testing. *Id.* After multiple meet and confers, and a court hearing, defendants finally admitted by the end of June 2022 that there was "A/B testing," which they refused to equate to beta testing. *Id.*, ¶ 23, Ex. O.

Plaintiff continued to inquire about beta testing. But Defendants produced no documents or information about it until July 26, 2022, the night before the deposition of Michael Buzinover, producing a document showing 30% of all TikTok users in the US and UK had access to the feature for no less than 60 days before the launch, wherein they used the Stitch Editing Feature. *Id.* ¶ 24, Ex. P.

Plaintiff continued to request the remainder of evidence concerning this beta release, including information on the number of posts and views of videos created

with the infringing feature during the beta period. *Id.*, ¶25. Defendants have not produced this information to this day. *Id.* ¶26. Moreover, when defense counsel tasked Andrew Maddox with collecting and providing metrics about posts and views, they did not tell him about the beta testing or where the data would be housed (it is not housed in the database that stores information from post-launch). *Id.*, ¶27, Ex. Q (Deposition of Andrew Maddox, dated September 12, 2022, 35:18-45:8); *id.*, Ex. C at 46:7-47:5 (the A/B testing information is stored in a database called Libra, which Defendants either never searched or searched and found that the information was destroyed).[1] As a result, Mr. Maddox did not pull information from the A/B testing period and this information was never provided to Plaintiff. *Id.* The metrics on posts and views from the 60-day beta period – during which 30% of all users in the US had access to the infringing feature – would show the extent of infringement and are relevant to Plaintiff's damages. Despite Plaintiff's best efforts, multiple meet and confers, and Court conferences, Defendants never produced this information. As such, and as a direct result of counsel's (1) failure to reasonably inform themselves, (2) outright misrepresentations, and (3) violations of Rule 26(g), Plaintiff incurred needless discovery costs and never received the information to which it was entitled.

*Search Terms*. When Plaintiff demanded to see the search terms Defendants used to produce only 10 internal documents, defense counsel initially refused absent a formal document demand. *Id.*, ¶ 28. Defendants then claimed they could not run search terms on Lark. *Id.* That was not true. Nevertheless, in a June 17, 2022 meet and confer, defense counsel stated that they provided the custodians a list of "review terms because [] our clients internal communications system, or network isn't really set up really to carry out a standard or normal keyword searches, … our custodians use these, uh, review terms to review the document [], before they were pulled to us or given to us." *Id.* at ¶ 29. Defense counsel maintained this position in a June 24,

---

[1] Defense counsels' failure to reasonably educate themselves about Defendants' systems is addressed in detail in Section III(F).

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS

2022 letter conveying these purported "review terms," and stating that "Defendants do not have a central network or database through which it can search for documents. . . . The custodians provided all documents identified using these [review] terms to counsel." *See Id.*, ¶30, Ex. I. Defendants later admitted, Lark **_can_** be searched with search terms. *Id.*, Ex. R (Declaration of Warren Solow, dated August 26, 2022, at ¶ 5). The battle over Defendants' ability to search for documents needlessly increased Plaintiff's litigation costs and defense counsels' failure to inform themselves about their client's systems contributed to their deficient productions.[2]

*Linked Documents*. Defendants produced many documents containing links to other documents, which they did not produce. Plaintiff called for the production of all linked documents and, specifically, for the "Stitch Promo Schedule." *Id.*, Ex. S. Defense counsel emphatically maintained that the link to it (appearing in blue, underlined text, with a document image next to it:  Stitch Promo Schedule ) was not a link and that the promo schedule followed thereafter in the produced document. *Id.*, ¶ 33. Despite Plaintiff's numerous (correct) arguments that the remainder of the document did not constitute a "promo schedule," defense counsel maintained that there was no link. *Id.,* ¶34. However, on June 17, counsel did an about-face and produced the Stitch Promo Schedule, which was, in fact, a link to a separate document. *Id.*, ¶35. They nevertheless continued to deny that the blue text was a "link" because it was not a "URL" that you could "copy and paste" and "get it onto the web browser and see it." *Id.* And while Defendants ostensibly agreed to look for the rest of the documents linked to those already produced, they failed to do so after multiple meet and confers, thus requiring Plaintiff to involve the Court in yet another discovery dispute. *Id.*, ¶36. Hence, Judge Kim ultimately ordered Defendants to produce all linked documents:

> Why is there a tempest in a teapot about this? . . . Go to those links and get what would be associated with them – whether it's a live link or a

---

[2] Miwa Tachibana testified that she was initially provided a list of questions to use to search for documents. *Id.*, Ex. G at 34:21-36:4. Plaintiff requested production of that list and Defendants refused, claiming privilege. *Id.* at ¶ 58.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS

> dead link at this point. . . I don't really care. The point is that at some point that content of that document was in some way incorporating by reference something that was hyperlinked to that link. It may no longer be live, but whatever that document was referring to, produce it.

*Id.*, ¶37, Ex. T (8/31 Tr. at 40:10-41:2).

### D. Defendants Refused to Appear for Properly Noticed Depositions and Perpetrated a Fraud on the Court Concerning Herman Chou

On ***July 13***, 2022, Plaintiff properly noticed the deposition of Herman Chou for July 28, 2022. *Id.*, Ex. U. Defendants refused to appear for the deposition, despite having not sought a protective order. *Id.*, Ex. V. Defense counsel represented that:

> Mr. Chou lives in Shanghai, a city still under tight lockdowns related to COVID-19. Travelling into and out of China right now is very burdensome, particularly given the logistics associated with lockdowns and quarantining.

*Id.* Plaintiff moved to compel the appearance of Mr. Chou and opposing counsel maintained that position directly to the Court at the August 31 hearing. *Id.*, Ex. T at 7:20-9:25. The Court ordered Defendants to produce Mr. Chou within seven days at Plaintiff's expense, due to the alleged burden on Defendants. *Id.* Defendants did not produce Mr. Chou within seven days. When they finally produced him on October 18, Mr. Chou testified that he had been ***in the United States voluntarily*** for two weeks ***in July*** for "work meetings," and that during that time he communicated with "over a hundred" of his US colleagues, including Michael Buzinover and "the legal department" about this litigation. *Id.*, Ex. Z at 36:18–25, 37:8–39:1; 41:12–42:20. As such, counsel's failure to produce him for the noticed deposition in July was egregious and their representations to the Court and to counsel concerning the burden of him being in China – which caused the Court to order Plaintiff to pay the costs of flying him to Macao – were disingenuous at best, if not outright an fraud on the Court.

On August 22, Plaintiff also properly noticed the depositions of Sheraz Amin and Mike Manco, whom Defendants' 30(b)(6) witness identified as having knowledge the witness lacked. *Id.*, Exs. W (Amin – 9/7/22), X (Manco – 9/8/22).

Defendants refused to appear for the depositions and never sought a protective order. *Id.*, ¶42. Plaintiff did not have an opportunity to obtain Court assistance as to these deponents because at the time it filed its last motion to compel, it was still attempting to resolve the issue with Defendants. *Id.*, ¶43.

### E.   The August 31, 2022 Order

Plaintiff raised much of Defendants' misconduct in its Motion to Compel that led to the August 31 Order, but the Court reserved on sanctions and ordered, among other things that Defendants had to:

(1)   Participate, within 48 hours, in a court-reported meet and confer to prove the adequacy of their prior efforts to comply with Rules 26(e), (f) and (g), and Judge Kim's ESI Checklist;

(2)   Cure all defects in their compliance with said rules (*i.e.* "Go back in time and describe what you did. And now, maybe with the benefit of my hindsight, what you should have done. And what from that can now be done in the remaining time that you have.");

(3)   Amend all discovery responses (they were all filled with boilerplate objections, giving no indication of what would be produced and when);

(4)   Produce a privilege log;

(5)   Produce "gross assets and liabilities figures … for TikTok" for the past two years "in response to interrogatory-style questions"; and

(6)   Respond to an RFA as to the overlap in advertising agencies and record studios with which the parties have worked.

*Id.*, Ex. T at 12:22-15:3, 56:4-62:16, 72:3-78:17, 90:16-95:13. In issuing his order, Judge Kim noted that "monetary sanctions might need to be awarded to the Plaintiff[] to compensate for the fact that it really shouldn't have been this hard." *Id.* at 70:12-15. He also noted that all the issues Plaintiff raised were "a rod of smoke that suggests there might be fire." *Id.* at 71:23-24. Judge Kim also noted that if defense counsel could not adequately justify and/or cure their failures, "it will dictate the kind of other sanctions that we might need to impose." *Id.* at 77:22-78:2. He also suggested that "Plaintiff should get" to recover "a reasonable request for some attorney fee[s]" "because . . . it shouldn't have gotten to this point." *Id.* at 78:3-9.

### F.     Defense Counsel Admitted to Multiple Rule 26 Failures

Pursuant to the Court's order, Plaintiff arranged for a stenographically recorded meet and confer, which occurred on September 2 and 6. Defendants made the following admissions during those meet and confers.

*Data Systems/Sources*. Defense counsel took no steps to independently ascertain or verify a list of data locations, systems, or sources that could contain relevant evidence. *Id.*, Ex. C (9/2 Tr at 29:2-16; 31:24- 34:23). They relied exclusively on in-house counsel, who identified only two (of many) systems. *Id.* Defense counsel also failed to ascertain whether Defendants' systems were archived or backed up. *Id.* at 35:8-36:4. They never even ascertained the means for accessing the data sources, having merely assumed that in-house counsel had direct access (they did not). *Id.* at 36:5-37:8. Defense counsel also purported to rely on Warren Solow for knowledge about Defendants' systems, but he is not an IT professional (9/2 Tr. at 72:19-73:3), did not have a working knowledge of many of Defendants' systems (including the one housing the A/B testing data), could not identify those who would, *id.* at 37:3-38:24, 43:1-44:24, 45:21-48:17, and had never searched for documents himself, *id.* at 74:5-16. Plaintiff was still learning of new sources containing patently relevant evidence as of the September 12, 2022 deposition of Andrew Maddox, including AEOLUS (TikTok app data about posts and views related to the infringing feature), MMM ("Make More Money," financial data related to advertising revenue), and ERP ("Enterprise Reporting System," TikTok's own financial data). *Id.*, Ex. Q (Maddox Dep. at 26:9-27:17 (AEOLUS), 33:20-34:11 (MMM), 42:19-43:6 (ERP)). Moreover, Defendants did not even disclose the existence of Libra – the A/B testing system - until September 2, 2022, even though it contained critical data sought by Plaintiff that the Court ordered to be produced, but which Defendants have never produced. *Id.*, Ex. C (9/2 Tr. at 46:14-48:14). Defendants also failed to preserve evidence from any system other than Lark and G-Suite. *Id.*, Ex. C (9/2 Tr. at 29:2-39:25). Indeed, the litigation hold only covered Lark and G-Suite. *Id.*, Ex. E.

*Custodians.* Defense counsel claimed that they had no obligation to identify a complete list of custodians likely to have relevant evidence; and that they only had to identify they two people who they (falsely) claimed had the most knowledge. *Id.*, Ex. C (9/2 Tr. at 106:17-109:12; 109:23-110:16; 125:21-126:10; 127:7-129:19). As a result, they only identified Michael Buzinover and Miwa Tachibana (until October 3, under Court order to supplement). *Id.* Plaintiff propounded an interrogatory seeking the identity of all witnesses "with knowledge or information relating to the allegations in [the pleadings]." *Id.*, Ex. AA, Rog No. 21. At the Court-ordered meet and confer, Mr. Keyes was not even aware of this Interrogatory (despite having signed the responses himself on August 19, wherein he claimed Mr. Buzinover and Ms. Tachibana were the only knowledgeable witnesses). *Id.*, Ex. C (9/2 Tr. at 110:8-112:4), Ex. AA. This is itself an egregious violation of Rule 26(g). Moreover, while Mr. Keyes considered the 25 employees named on the April 15, 2021 hold to be custodians likely to possess relevant evidence, he had no explanation for why they were never identified and searched. *Id.*, Ex. C (9/2 Tr. at 127:7-129:19). Instead, he relied on his disproved belief that the two custodians initially selected had "access to the corpus of relevant documents that would be relevant." *Id.* at 129:3-132:12.

*Destruction.* As set forth in Section III(A) above Defendants took no actions to ensure receipt of, much less compliance with, their belatedly-issued litigation holds, which went to an admittedly-insufficient number of custodians and covered only 2 of dozens of relevant systems/storage locations. In addition, none of Defendants' counsel (or even Defendants' Warren Solow) ever attempted to determine for themselves whether any relevant evidence in this case had been destroyed at any time, including before the first litigation hold was issued. *Id.*, Ex. C (9/2 Tr at 52:5-56:10). Defense counsel attempted to justify this failure on the grounds that they were not permitted access to Defendants' systems, *id.* at 54:25-55:7. But if that were a valid excuse, it would swallow the rule requiring outside counsel to oversee discovery. Moreover, as set forth in Section III(A), key custodians

testified they could and had deleted documents at will during the preservation period.

## G. The September 20, 2022 Order

Plaintiff moved to compel searches from additional custodians (including the 12 custodians to whom the August 31, 2022 was addressed) across multiple systems on September 16, and, on September 20, Judge Kim ordered Defendants to:

(1) Search for responsive Lark documents from "the [12] custodians who just recently received Defendants' August 31, 2022 litigation hold instruction."

(2) Produce all "[n]onprivileged documents responsive to Plaintiff's applicable document requests (like those directed to custodians Tachibana and Buzinover) … with no further objection by no later than October 3, 2022."

(3) Provide "[a] complete privilege log compliant with Rule 26(b)(5) . . . for responsive documents claimed to be protected as attorney-client communication or attorney work product."

(4) State "in a written response certified under Rule 26(g)" "[i]f there are no responsive documents to a particular request."

*Id.*, Ex. BB. **(**Defendants agree that the order applies to 12 custodians, not 11.). Judge Kim also noted that his order did not preclude Plaintiff "from seeking the imposition of sanctions for provable improper certification under Rule 26(g)(3)." *Id.* When Plaintiff sought clarity on the filing of such a motion, Judge Kim reissued his order, striking the last sentence. *Id.*, ¶ 48 & Ex. CC. Plaintiff understood that to be a direction that this motion should be submitted to Judge Blumenfeld. *Id.*

## H. Defendants Did Not Comply with the Court's Two Orders

Defendants violated the Court's orders in at least 3 ways.

*Assets and Liabilities.* As set forth in Section III(E), the Court ordered Defendants to produce TikTok's assets and liabilities for the past two years. *Id.*, Ex. T at 90:16-95:13. Because punitive damages are in issue in this case, the Court directed Defendants not to object based on "relevance" and not to "worry about what it will be used for or how well it will be used." *Id.* Plaintiff propounded damages interrogatories at the Court's direction seeking precisely this information and

1   Defendants refused to provide it. *Id.*, Ex. DD.

2       *Ad Agencies and Music Studios*. As set forth in Section III(E), the Court

3   ordered Defendants to respond to RFAs as to the overlap in advertising agencies and

4   record labels with which the parties have worked. *Id.*, Ex. T at 12:22-15:3. Plaintiff

5   compiled a list of agencies and labels with which it had worked and propounded RFA

6   Nos. 75 and 77 seeking admissions as to them. *Id.*, Ex. EE. Defendants refused to

7   provide responses to the majority of the agencies and labels. *Id.*, Exs. EE, FF, GG.

8       *Improper Rule 26(g) Certification*. As set forth in Sections III(E) & (G), the

9   Court ordered Defendants to supplement every discovery response, certify them,

10   produce documents with no further objection, and state explicitly whether documents

11   were being withheld. Defense counsel's certification in their supplemental responses

12   to Plaintiff's Requests for Production ("RFPs") is improper for at least two reasons.

13       First, RFP Nos. 36-37 sought all documents related to Plaintiff and

14   Defendants' knowledge of Plaintiff prior to the filing of the litigation. *Id.*, Ex. HH.

15   Defendants did not claim to be withholding any documents. *Id.* But they admitted

16   that they took no action to collect documents concerning the cease and desist letters

17   or Defendants' response to them other than the searches they conducted in Lark chats.

18   *Id.*, Ex. C (9/2 Tr. at 57:20-62:9). Defendants produced no responsive chats from the

19   period between the cease and desist letters (December 28, 2020) and the filing of the

20   complaint (April 12, 2021), and Defendants failed to identify any such

21   communications on the privilege log. *Id.* at ¶ 54. However, it is clear such documents

22   exist, because Defendants produced a document from January 2021 wherein they

23   were brainstorming names for the infringing feature in case they were sued and lost.

24   *Id.*, Ex. II (BYTE_00011395). Thus, they must have had internal communications

25   concerning the demand letters.

26       The point here is not that Defendants failed to produce purportedly privileged

27   information. Rather, it is that Defendants failed in their discovery obligations,

28   provided improper Rule 26(g) certifications, and violated several of the Court's

August 31 orders. Defendants' failure to produce or log documents that clearly exist, coupled with the egregious preservation failures, supports the inference that Defendants spoliated relevant documents.

Second, RFP No. 64 called for all documents concerning the "mitigation measures and strategies" that Defendants designed for the risks they identified in connection with the infringing feature. *Id.*, Ex. HH. Defendants responded that they had produced TikTok's generic Community Guidelines and the number of videos removed for violating those guidelines, falsely stating "Defendants are not withholding any responsive documents." *Id.* Opposing counsel signed the supplemental responses. *Id.* When Plaintiff cited witness testimony that content moderators were made aware of the release of the Stitch feature and that they received specific instructions or guidelines related to it, *id.*, Ex. FF, defense counsel pointed to a Lark chat produced on October 3, *id.* Ex. GG. However, that chat itself suggests that many other responsive documents exist. *Id.*, Ex. JJ. Indeed, Jun Young Ro points out that she prepared her team for the release of the feature, they were "informed of the strategy" concerning moderation of such videos, and they reached a decision to moderate them in the same way they were moderating Duet videos. *Id.* As such, the Rule 26(g) certification that no documents were withheld is patently false.

## I. Defendants Withheld Responsive Documents Until After the Summary Judgment and Expert Deadlines

When the Court gave Defendants until October 3 to comply with Judge Kim's August 31 orders – which required them to act with haste – they took the position that they had no obligation to supplement their discovery responses until late on October 3. *Id.*, Exs. KK, LL. This was not in good faith and was aimed at preventing Plaintiff from seeking further relief from Judge Kim. In addition to producing documents from 8 of the 12 custodians they were directed to search on October 3, Defendants produced 5 documents from a new custodian and 204 "Company Documents." This was pure gamesmanship.

The 204 Company Documents were not the subject of the two orders and should have been produced many months ago, including, for example:

- **Lark Chats** covering conception through launch of the feature (approx. 4,000 chats). Defense counsel represented at the August 31 hearing that they were already in possession of these chats, which were their employees' "primary mode of communication". *Id.* at ¶ 61 & Ex. T (Aug. 31 Tr. at 66: "we have these Lark Chats" "right now" "at Dorsey & Whitney").

- **Internal Documents Defining STITCH as Related to Sewing and Characterizing the Name of the Feature as Suggestive of its Purpose** such as BYTE_00011055, which pulls the following dictionary definition for the word Stitch: "n. (sewing) a stitch," "(knitting) a stitch," "sew; mend; suture (wound)," and provides an example, which states: "Fold the fabric and stitch the two layers together." *Id.*, Ex. MM.

  - Defendants also state: "**As the name _suggests_, Stitch creation … is to stitch two videos into one video.**" *Id.* This undercuts Defendants' fair use defense and their counterclaim for genericism and Plaintiff had no opportunity to inquire about it with Defendants' 30(b)(6) witness.

- **Mock Ups for the Stitch Logo** were produced for the first time, thereby providing information concerning the chosen logo and raising additional questions about its intended meaning (it appears to show a file containing sutures). *Id.*, Ex. NN - BYTE_00010833, Ex. OO - BYTE_00010920.

- **Internal Documents Raising Risks Related to the Feature** such as BYTE_00010859 which states "Can we ensure we have impersonation and disinformation policies in place before we launch so that we do not see a rise in misleading videos as a result of this [feature]." *Id.*, Ex. PP.

- **Internal Documents Defining "Stitch"** such as BYTE_00011094: Stitch allows users to "create a new video and _splice_ on to another user's existing video," *id.*, Ex. QQ, and BYTE_00011216 which defines the feature as: "User can _clip_ an original video and record a new video to follow it, which means that user can _connect them together_ to form a new complete video," *id.*, Ex. RR. These documents undermine Defendants' claim that "stitch" is generic.

- **Internal Documents Touting Success of Stitch Feature** such as BYTE_00011270, which states: "Stitch's success is clear, with more than 100B VV." *Id.*, Ex. SS.

- **Internal Document Showing that Defendants Considered Changing the Name of Feature to Another Word Related to Sewing** at BYTE_00011395, which is from January 2021 (after the December 28, 2020 Cease and Desist

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS

Letter that Plaintiff emailed to TikTok), and which states:

o "Stitch is facing a copyright [sic] dispute and we are proactively exploring alternative name options in the event that a new name is needed." *Id.*, Ex. B. THREAD, WEAVE, and KNIT have "[s]imilar meaning/context to Stitch," with sewing definitions and images. *Id.*

There is no excuse for withholding these documents until October 3, well after summary judgment and expert disclosures were due. This is not TikTok's first litigation; Defendants were named in over 120 state and federal court actions prior to this one. *Id.*, Ex. TT. They know how to produce documents – they just chose to withhold these until discovery was closing.  Moreover, Defendants gave no excuse for their failure to produce the 200 other Company Documents that they withheld.

## IV.   **ARGUMENT**

### A.   **Defendants Violated Multiple Court Orders, are in Contempt, and Should Be Assessed Monetary Sanctions for that Contempt**

As set forth in Section III(H), Defendants disregarded clear orders of the Court to: (1) produce assets and liabilities for TikTok Inc., (2) respond to RFA's concerning advertising agencies and music labels with which Defendants have worked, and (3) rectify their failures under Rule 26(g). Defendants did not do these things and instead doubled down on their inadequate discovery justifications. They also gave false and misleading Rule 26(g) certifications again in their supplemental responses (ordered by the Court). They are thus in contempt. *Line-X LLC*, 2021 WL 6494881, at *1.

Rule 37(b)(2)(C) provides that upon a finding of contempt, the Court "***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). Because Defendants violated a discovery order, the award of fees under Rule 37 is "mandatory." *Notorious B.I.G. LLC v. Yes. Snowboards*, 2021 WL 6752168, at *3 (C.D. Cal. Dec. 22, 2021), *R&R adopted*, 2022 WL 1909548 (C.D. Cal. Jun. 3, 2022).

**B.     Defendants' Discovery Misconduct Also Warrants Sanctions**

As set forth in Section III above, Defendants and/or their counsel also:

<u>Failed to Preserve Documents</u>. Defendants failed to issue a hold when the duty to preserve arose, issued a deficient hold in April 2021 and then issued another deficient hold in August 2022, with only two weeks left in discovery. These holds omitted relevant data sources and custodians likely to have responsive information. They were also entirely ineffective as multiple custodians testified that they did not receive the hold and were free to (and did) delete documents at will. Defendants never investigated the extent of such destruction.

<u>Failed to Reasonably Search for Documents and Oversee Discovery</u>. Defense counsel failed to properly inform themselves of Defendants' system and as a result, they did not notify Plaintiff or the Court about an issue that would purportedly cause delayed and incomplete productions. They also failed to insist upon access to Defendants' system when their exclusion therefrom resulted in the production of only 10 documents. They also elected to have only two custodians search for documents and ***make their own relevancy*** determinations, despite having put 25 custodians on notice in April 2021 and another 12 on notice in August 2022. Moreover, their haphazard search for documents, combined with their failure to properly oversee discovery resulted in the failure to produce documents that the Court ordered be produced, including, for example, the beta test documents.

<u>Made False and Improper Rule 26(g) Certifications</u>. Defense counsel signed discovery responses falsely asserting that documents concerning (at least) beta testing, knowledge of Plaintiff, and mitigation measures and strategies (for risks Defendants identified in connection with the infringing feature) either did not exist or had all been produced. These certifications were demonstrably false.

<u>Made Misrepresentations to Plaintiff and the Court to Obstruct Discovery</u>. Defense counsel made many misrepresentations during the course of discovery to obstruct disclosure. They falsely and unequivocally represented to Plaintiff

20

repeatedly that Defendants did not engage in beta testing, despite proof to the contrary. They also falsely represented to Plaintiff ***and to the Court*** that Herman Chou could not be deposed in the US because the Covid-lockdown in Shanghai was too burdensome. Yet, Mr. Chou was in the US for two weeks in July (the month he was to be deposed) for work and counsel knew it. As a result of counsel's false statements, the Court ordered Plaintiff to pay for Mr. Chou to fly to Macao to be deposed. Counsel further falsely represented to Plaintiff that linked documents did not exist (or were not links) and falsely represented that Defendants' systems could not be searched with search terms or by administrators. These misrepresentations resulted in meet and confers, motions, and burden that Plaintiff should not have had.

<u>Failed to Appear for Properly-Noticed Depositions</u>. Defendants refused to appear for the properly-noticed depositions of Herman Chou, Sheraz Amin, and Mike Manco. They did not seek a protective order; they simply refused to appear.

<u>Withheld Key Documents Until After MSJ and Expert Discovery</u>. Defendants produced over 200 non-custodial, company documents and several spreadsheets listing thousands of Lark chats (their "primary" mode of communication) during the last few minutes of the last day of discovery, in a plain attempt to prevent Plaintiff from further investigating, seeking relief, or using these documents in summary judgment motions or expert reports.

Each of these failures/actions independently warrants monetary sanctions; and when considered together, Defendants and their counsels' conduct warrants a significant sanction to deter future conduct, penalize past conduct, and compensate Plaintiff for the expense, hassle, and lack of full disclosure. As the Court has stated:

> For the discovery system to function properly, the costs of resisting discovery must be sufficiently great so that the benefits to be gained from sharp or evasive discovery practices are outweighed by the sanctions imposed when those practices are discovered.

*Carrillo*, 2012 WL 4791614, at *9. As such, the Court has "broad discretion to" impose "sanctions" for discovery misconduct "both to penalize . . . [and] to deter

those who might be tempted to such conduct in the absence of such a deterrent." *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 310–11 (C.D. Cal. 2020).

Courts regularly find that the failure to preserve documents and to issue an effective hold warrants ***at least*** monetary sanctions. *Carrillo,* 2012 WL 4791614, at *9 (issuing monetary sanctions for failure to preserve evidence following "wholly inadequate" hold that omitted relevant data sources and custodians testified not receiving; custodians could and did continue to delete data); *Spencer v. Lunada Bay Boys*, 2017 WL 10518023, at *12 (C.D. Cal. Dec. 13, 2017) (ordering monetary sanctions for failure to preserve).

This Court has also imposed monetary sanctions on parties who failed to attend properly noticed depositions under Fed. R. Civ. P. 37(d)(1)(A)(i). *Chiteishvili*, 2018 WL 6219988, at *1 (granting monetary sanctions for failure to appear at deposition); *Tacori Enterprises v. Beverlly Jewellery Co.*, 253 F.R.D. 577, 585 (C.D. Cal. 2008) (awarding fees for a party's failure to appear at a properly noticed deposition).

This Court has also awarded monetary sanctions to penalize misrepresentations made to opposing counsel and the Court. *Meggitt (Orange Cnty.), Inc. v. Nie Yongzhong*, 2015 WL 1809354, at *11 (C.D. Cal. Apr. 21, 2015) (ordering monetary sanctions for misrepresentations made to opposing counsel and the court). The same is true when counsel claims it made a diligent search for documents and no documents exist, yet later produces responsive documents. *Ramos v. Swatzell*, 2017 WL 2857523, at *15 (C.D. Cal. June 5, 2017), *r&r adopted*, 2017 WL 2841695 (C.D. Cal. June 30, 2017) (awarding plaintiff monetary sanctions). Likewise, this Court has ordered monetary sanctions where – as here – a party misled opposing counsel about the ability to search for documents and withheld relevant information until the day of discovery cutoff. *Rodriguez*, 2021 WL 4692401, at *2.

This is especially true here where "Plaintiff[] … suffered substantial prejudice as a result of Defendants' acts because they have been forced to incur costs relating to: (1) the review of Defendants' inadequate document production to determine that

responsive documents were missing; (2) numerous 'meet and confer' conferences with Defendants' counsel regarding such inadequate production; (3) the filing of three motions to compel regarding the documents and e-mails at issue; and (4) the filing of the instant motion." *Hous. Rts. Ctr. v. Sterling*, 2005 WL 3320739, at *6 (C.D. Cal. Mar. 2, 2005). "Plaintiffs are entitled to monetary sanctions for the costs they incurred in investigating, conducting 'meet and confer' conferences, and the filing of the instant motion." *Id.* (awarding monetary sanctions where Defendants inexcusably produced 2,701 relevant documents on the last day of discovery and were grossly negligent due to their purposeful "sluggishness in taking steps to prevent destruction of evidence"; also granting plaintiffs' "request to submit the amount of fees and costs is granted").

"Sanctions [in the form of reasonable expenses] are likewise mandatory under Rule 26(g), which requires that counsel make a reasonable investigation and effort to certify that the client has provided all information and documents available to it, which are responsive to the discovery request - something that [Defendants'] counsel failed to do." *Carrillo*, 2012 WL 4791614, at *12. "If a certification violates Rule 26(g)(1) without substantial justification, the Court must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both, including an order to pay the reasonable expenses caused by the violation." *Id.*

In *Carrillo*, as here, the defendant's production was "wholly inadequate" and the plaintiff "expressed concern that [the defendant] ha[d] not performed a reasonably diligent search for responsive documents." 2012 WL 4791614, at *3. The plaintiff "repeatedly raised these concerns with [the defendant] in numerous meet and confers, many of which [were] to no avail," as the defendant "repeatedly represented that diligent searches had been made and that all responsive documents had been produced, only to turn around and 'find' more documents after plaintiff[] proved those contentions were false." *Id.* And as here, the defendant resisted the plaintiff's efforts to uncover "the steps [defendant] had taken to search for responsive

documents." *Id.* The defendant also failed to search "a significant portion of its electronically stored information," failed to provide "satisfactory assurance … that such documents ha[d] not been destroyed," and admitted that it had only searched five custodian's accounts. *Id.* at *4. Following a court hearing and an order to produce documents, the defendant produced additional documents, including from categories it had "previously falsely certified that it did not have." *Id.*

Moreover, as here, when the defendant produced the individuals it claimed to be knowledgeable about "the steps taken to search for responsive documents," they did not recall basic information about the purported searches. *Id.* at *5. And, as here, defendant's custodians testified that they were free to delete (and did delete) documents and defendant's "counsel was unable to confirm whether any steps had been taken to preserve [such documents] after learning of their existence." *Id.* at *8-9. As a result of this similar conduct, the Court found that the plaintiff had been prejudiced and "continue to be denied access to documents that the Court has already ordered produced." *Id.* The Court found sanctions warranted under Rule 37(b)(2)(C) and "mandatory under Rule 26(g)" and called for briefing on the amounts. *Id.* at *12.

In *R&R Sails Inc. v. Ins. Co. of State of Pa.*, the plaintiff sought claim logs and defense counsel certified that no such logs existed on multiple occasions; defendant later found the claim logs (which were purportedly housed in a different data system) and produced them. 251 F.R.D. 520, 524-25 (S.D. Cal. 2008). Defense counsel's failure to make a "reasonable inquiry ... into whether Defendant possessed discovery responsive to Plaintiff's requests" rendered their conduct without substantial justification and warranted an assessment of monetary sanctions. *Id.* at 527.

In *Rago v. Select Comfort Retail Corp.*, this Court awarded monetary sanctions under rule 37(c)(1)(A) after finding that a party had withheld "critically responsive documents on several occasions"; "misle[d] [opposing counsel] about their existence"; produced documents untimely (which – as here - precluded opposing counsel from questioning about the documents at deposition or incorporating them

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS

into summary judgment or expert reports); produced responsive documents only after their existence was discovered in deposition (when a reasonable investigation should have uncovered them); "failed to engage in due diligence to ensure that all responsive documents … were timely produced"; and had "therefore demonstrated a pattern and practice of discovery failures [], if not discovery abuse," amounting to "grossly negligent" conduct. 2020 WL 8611033, at *7 (C.D. Cal. Dec. 9, 2020).

Finally, in *Tatung Co., Ltd. v. Hsu,* this Court awarded monetary sanctions upon finding that a party: had "engaged in a campaign of willful obfuscation and [] failed in its obligations to answer discovery in a forthright manner," "failed to provide accurate and complete information to the propounded discovery" (requiring the court to order supplementation of discovery responses), "[s]ubmitted false verifications under oath to give the false impression [that the party] ha[d] complied with [the] Court's orders and the Federal Rules," and caused the opposing party "significant expense and effort in seeking to get valid and useable discovery information." 2016 WL 1047343, at *3 (C.D. Cal. Mar. 16, 2016).

On the basis of this precedent and under Rules 37, 26, and the Court's inherent powers, Plaintiff is entitled to monetary sanctions covering all of the expenses it incurred as a result of Defendants' ongoing discovery misconduct. Plaintiff thus requests the Court set a schedule for briefing on the appropriate amount of monetary sanctions to be awarded Plaintiff.

## V. **CONCLUSION**

For the reasons set forth above, Plaintiff requests that the Court find Defendants in Contempt, award monetary sanctions in an amount to be determined after further briefing, and award such other and further relief as this Court deems just and appropriate.

Dated: November 4, 2022

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: _/s/ Andrew D. Skale_____

Andrew D. Skale (SBN 211096)
Courtney Rockett (*Pro Hac Vice*)
Kara Cormier (*Pro Hac Vice*)
Adam B. Korn (SBN 113311)
*Attorneys for Plaintiff Stitch Editing Ltd.*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT
AND SANCTIONS

## <u>LOCAL RULE 7-3 CERTIFICATION</u>

I certify that the parties met in person or by videoconference, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part. The parties were not able to resolve this dispute.

*/s/ Andrew D. Skale*
Andrew D. Skale (SBN 211096)

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS